**Appellant's Motion for Rehearing En Banc Denied as Moot; Memorandum Opinion of August 29, 2013 Withdrawn; Affirmed in Part, Reformed in Part, Reversed and Rendered in Part, Reversed and Remanded in Part, and Substitute Memorandum Opinion filed November 7, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00165-CV

## HARDAM S. AZAD, INDIVIDUALLY AND D/B/A 5 MILLION SQUARE FEET COMPANIES, Appellant

## V.

## MRCO, INC. AND COMMERCIAL ROOF CONSULTANTS & CLAIMS MANAGEMENT, LLC, Appellees

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-65685**

## S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

We deny the motion for rehearing en banc as moot, withdraw our memorandum opinion of August 29, 2013, and issue the following substitute memorandum opinion in its place.

Hardam S. Azad, individually and d/b/a 5 Million Square Feet Companies ("Azad"), appeals from a judgment against him and in favor of MRCO, Inc.

("MRCO") and Commercial Roof Consultants & Claims Management, LLC ("Commercial Roof"). We affirm the trial court's judgment in part, reform the judgment in part, reverse and render in part, and reverse and remand in part.

FACTUAL BACKGROUND

This dispute arises from roof damage to commercial properties caused when Hurricane Ike hit the Houston metropolitan area in September 2008. Azad signed contracts as the "Property Owner" in December 2008 under which MRCO, a general contractor for commercial roof repair projects, was to perform roof repairs for three properties damaged by Hurricane Ike: 10701 Gulf Freeway Houston, Texas 77034 ("Gulfbrook"); 18119 Egret Bay Blvd. Webster, Texas 77058 ("MarinaGate"); and 28531 Highway 249 Tomball, Texas 77375 ("Tomball").

MRCO is engaged in a joint venture with Commercial Roof under which (1) Commercial Roof identifies damaged properties, investigates the extent of roof damage, and estimates the cost of necessary roof repairs using a software program called "Xactimate;" and (2) MRCO performs the roof repairs. In return for performing these services and negotiating with insurers, MRCO and Commercial Roof receive insurance proceeds for the roof repairs and split any profits equally. MRCO's co-owner is Craig LeTulle. Commercial Roof's founder is Mark Westbrook.

On December 2, 2008, Mark Westbrook signed an Insurance Authorization Form for each of Gulfbrook, MarinaGate, and Tomball on a signature line that identified him as the "MRCO, Inc. Representative." On December 3, 2008, Hardam Azad signed each Insurance Authorization Form on a signature line that identified him as "Property Owner."

Each Insurance Authorization Form states as follows:

2

This will authorize **Mark Westbrook**, of MRCO, Inc. to provide complete scopes of work and current Xactimate pricing for any insurance related claims due to the storm damages which occurred on 9-13-08 [at location] . . . .

MRCO, Inc. and its authorized representatives shall have the right and authority to deal directly with your insurance company with respect to the temporary repair and replacement of the roof to the above stated claim.

The owners agree to contract all necessary repairs to the building from Hurricane IKE damage with MRCO, Inc. once the claim has been finalized and agreed to by both parties involved.

The owners will not pay any more than the estimate provided for all related items damaged and will be fully replaced per code and manufactures [sic] specifications.

All damaged items will be replaced with like, [sic] kind, and quality, not to exceed the amount finalized with Insurance Company for claim date stated above.

It is understood by both parties that the scope of work and the materials used for repairs and or replacement from hurricane damages will be approved by owners and then the final contract can be written and signed by both parties.

In the event of denial and or no claim the property owner will not be assessed any fees by MRCO, Inc.

On December 5, 2008, Westbrook and Azad signed an Insurance Authorization Form containing the same terms for each of four additional properties. Westbrook again signed as "MRCO, Inc. Representative" and Azad signed as "Property Owner/Title." Each of the four forms signed on December 5 came with another one-page document called "Insurance Authorization Form (Addendum page 2)." Westbrook signed each addendum separately as "MRCO Inc." and Azad signed each one as "Property Owner."

The addendum signatures were dated December 5, 2008. The addendums were identical and stated as follows with respect to the four additional properties:

It is understood by both parties that the owners will not be assessed any fees and have no obligation what so ever to MRCO, Inc. or its consultants.

This agreement is based on the facts that are understood as MRCO, Inc. will be doing all repairs or replacements from the Insurance amount from Hurricane IKE damages to the 3-properties listed below:

1. 1811-18307 Egret Bay Blvd. Houston TX

2. 10701 Gulf Freeway Houston TX

3. 14099 FM 2920 Tomball TX

In return the owners will have no contractual obligations for the 4-remaining properties.

Azad agreed during questioning at trial that each Addendum was the "final written contract" by which Azad and MRCO agreed that MRCO would perform the repairs on Gulfbrook, Tomball, and MarinaGate.

The property insurer for Gulfbrook was Zurich. The property insurer for the Tomball and MarinaGate properties was Certain Underwriters at Lloyd's, London. The Lloyd's policy contains an appraisal provision under which a disagreement between the property owner and the insurer regarding the amount of loss can be submitted to two appraisers elected by the parties and an umpire selected by the appraisers. A decision by any two of the three is binding as to the amount of loss but does not address the scope of policy coverage or exclusions.

MRCO and Commercial Roof performed under the contracts until September 2009 by, among other things, testing the damaged roofs on the Gulfbrook, Tomball, and MarinaGate properties; preparing repair estimates; and attending meetings. According to LeTulle, MRCO was ready to begin repairs on the Gulfbrook property when a disagreement arose with Azad.

Westbrook testified about a meeting with Azad on September 4, 2009. In Westbrook's version of events, Azad demanded that MRCO and Commercial Roof

4

divert insurance proceeds intended for roof repairs and use them instead to upgrade the Gulfbrook building's facade. According to Westbrook, Azad also insisted that MRCO and Commercial Roof participate in competitive bidding to obtain the right to perform work that already had been contractually promised to them. In this version of events, Azad fired MRCO and Commercial Roof when they refused Azad's demands.

Azad contradicted Westbrook's version of events; denied that he fired MRCO and Commercial Roof; and asserted that they quit. According to Azad, the disagreement on September 4, 2009 was limited to whether they should accept an insurance amount to which the carrier's adjuster had agreed, or instead try negotiate for a higher amount.

Azad sent a letter to MRCO and Commercial Roof on October 9, 2009, stating that the contracts were terminated. MRCO and Commercial Roof filed suit on October 12, 2009.

### PROCEDURAL BACKGROUND

The case was tried to a jury in October 2011. The jury charge submitted nine questions.

In response to Question No. 1, the jury answered "no" to a question asking whether Azad disclosed to MRCO and Commercial Roof that the Gulfbrook, MarinaGate, and Tomball properties were owned by entities other than himself, or that he was acting on behalf of another party in signing the Insurance Authorization Agreements. The jury answered "yes" as to Gulfbrook, MarinaGate, and Tomball in response to Question No. 2, which asked whether "any of the Defendants named below" failed to comply with the contracts. In response to Question No. 3, the jury answered "no" to a question asking whether the failure to

5

comply was excused. The jury also answered "no" in response to Question No. 4, which asked whether Azad fraudulently induced MRCO and Commercial Roof to enter into the contracts. In response to Question No. 5, the jury awarded damages to MRCO and Commercial Roof totaling $3,660,487.43. The jury answered "yes" to Question No. 6, which asked whether Azad committed forgery with the intent to harm MRCO and Commercial Roof. Based on the instructions, the jury did not answer Question Nos. 7 and 8. In response to Question No. 9, the jury awarded attorney's fees totaling $839,359.

Azad filed a motion for judgment notwithstanding the verdict, or, alternatively, a motion for new trial; he also filed a supplement to this motion. The trial court denied these motions and signed a judgment in conformity with the jury verdict. Azad timely appealed.

### ISSUES ON APPEAL

Azad raises three issues on appeal with numerous subparts.

In his first issue, Azad contends that the trial court erred in denying his motion for judgment notwithstanding the verdict under Texas Rule of Civil Procedure 301 because the Insurance Authorization Forms addressing the Tomball and MarinaGate properties are unenforceable as a matter of law based on (a) failure of condition precedent, (b) indefiniteness, and (c) lack of ripeness.

In his second issue, Azad contends the trial court erred in denying his motion for judgment notwithstanding the verdict under Texas Rule of Civil Procedure 301 because the record establishes the following.

(a) No evidence supports the jury's "no" answer to Question No. 1, which asked whether Azad disclosed to MRCO and Commercial Roof on or before December 3, 2008, that the Tomball, MarinaGate, and

6

Gulfbrook properties were owned by entities other than Azad, or that Azad was acting on behalf of another party in signing the Insurance Authorization Form.

(b) No evidence supports the jury's "yes" answers to Question No. 2 asking whether there was a failure to comply with the Insurance Authorization Forms.

(c) As a matter of law, and contrary to the jury's "no" answers to Question No. 3, MRCO and Commercial Roof breached and repudiated the Insurance Authorization Form.

(d) No evidence or factually insufficient evidence supports the damages awarded by the jury in answer to Question No. 5 with respect to the Tomball and MarinaGate properties based upon flawed expert testimony.

(e) No evidence supports a determination that Commercial Roof had standing to sue.

(f) No evidence supports the jury's award of attorney's fees in answer to Question No. 9.

(g) The jury's answer to Question No. 6 was immaterial.

In his third issue, Azad contends that the trial court abused its discretion in its conduct of the trial by (a) excluding MRCO's tax return information from evidence; (b) overruling Azad's objection to a damages instruction in Question No. 5; (c) determining that the issue of undisclosed principal submitted in Question No. 1 had been tried by consent; and (d) allowing witnesses to testify over objection to legal conclusions regarding whether an appraisal award is a finalized insurance claim or amount, "the insurance policy and coverage lawsuit," and "the insurer's

7

reasons for filing the coverage lawsuit."

## STANDARDS OF REVIEW

***Sufficiency of the Evidence.*** A trial court may disregard a jury verdict and render judgment notwithstanding the verdict when no evidence supports the jury finding on an issue necessary to liability, or when a directed verdict would have been proper. *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); Tex. R. Civ. P. 301. A directed verdict is proper when no evidence of probative force raises a fact issue on a material element of the plaintiff's claim, or when the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Inc. Co. of Am. v. Fin. Review Servs. Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

"No evidence" or legal insufficiency challenges may be sustained only when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L. REV. 361, 362-63 (1960)); *see also Niche Oilfield Servs., LLC v. Carter*, 331 S.W.3d 563, 569 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

We must consider evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. If the evidence allows only one inference, neither jurors nor the reviewing court may disregard that evidence. *Id.* "The traditional scope of review does not disregard contrary evidence in every no evidence review if there is no favorable evidence (situation (a) above), or if contrary evidence renders supporting

8

evidence incompetent (situation (b) above) or conclusively establishes the opposite (situation (d) above)." *Id.* at 810-11. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *Id.* at 822. Accordingly, the ultimate test for legal sufficiency always must focus on whether the evidence would enable reasonable and fair-minded jurors to reach the verdict under review. *Id.* at 827. Legal sufficiency review in the proper light must credit favorable evidence if reasonable jurors could do so, and must disregard contrary evidence unless reasonable jurors could not do so. *Id.* The reviewing court cannot substitute its judgment for that of the trier of fact if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

Azad also raises a factual sufficiency challenge with respect to evidence supporting the jury's damage award. In reviewing factual sufficiency, we must consider and weigh all the evidence. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Id.*

*Immateriality.* A jury answer may be disregarded when it is immaterial. *Se. Pipe Line Co. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999). A question is immaterial when it should not have been submitted; calls for a finding beyond the jury's province; or has been rendered immaterial by other findings. *Id.*

*Expert Testimony.* Azad's appellate challenges focus in part on expert testimony supporting MRCO's and Commercial Roof's damage claims. "'If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.'" *Cooper Tire & Rubber Co. v. Mendez*, 204

S.W.3d 797, 800 (Tex. 2006) (quoting Tex. R. Evid. 702); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588-89 (1993). Expert testimony is admissible when (1) the expert is qualified, and (2) the testimony is relevant and based on a reliable foundation. *Mendez,* 204 S.W.3d at 800. If the expert's evidence is not reliable, it is not evidence. *Id.* Courts must determine reliability from all of the evidence. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997).

Additionally, it is clear that purely conclusory expert opinion testimony cannot support a judgment. "An expert opinion is considered conclusory if it is essentially a 'conclusion without any explanation.'" *Pink v. Goodyear Tire & Rubber Co.*, 324 S.W.3d 290, 296-97 (Tex. App.—Beaumont 2010, pet. dism'd) (quoting *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 & n.32 (Tex. 2008)).

***Conduct of Trial.*** Azad's complaints regarding evidentiary rulings during trial and inclusion of instructions in the jury charge are reviewed for abuse of discretion. *See, e.g., In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (admission or exclusion of evidence); *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (instructions in jury charge).

## ANALYSIS

### I.    Enforceability

Azad contends that the jury's "yes" answers to subparts (a) and (b) of Question No. 2, its "no" answers to subparts (a) and (b) of Question No. 3, and the damages found in response to subparts (a) and (b) of Question No. 5 should be disregarded because the Insurance Authorization Form is unenforceable with respect to the Tomball and MarinaGate properties. He contends the contract is

unenforceable due to (1) failure of a condition precedent; (2) indefiniteness; and (3) lack of ripeness. Azad does not challenge the enforceability of the Insurance Authorization Form addressing the Gulfbrook property.

## A.     Condition Precedent

Azad argues that an unambiguous condition precedent to enforceability of the Insurance Authorization Form was not met because there is no evidence that "a finalized insurance claim or amount had been satisfied for Tomball or MarinaGate (or that any alleged breach by defendants contributed to the non-occurrence of this condition precedent)."

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). "A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement." *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1876). "Conditions may, therefore, relate either to the formation of contracts or the liability under them." *Id.* "Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Id*.

Azad contends that "a finalized insurance claim and amount" was a condition precedent that had to be satisfied "before MRCO could do any work or receive any payment therefor." At another point, Azad contends that "finalizing a claim amount with the insurance carrier was a condition precedent to the enforceability of the IAFs for Tomball and MarinaGate . . . ." The specific obligation imposed upon Azad under the Insurance Authorization Form is the obligation "to contract all necessary repairs to the building from Hurricane IKE

11

damage with MRCO . . . ."[1]  The form also states: "It is understood by both parties that the scope of work and the materials used for repairs and or replacement from hurricane damages will be approved by owners and then the final contract can be written and signed by both parties."

According to Azad, there is no "finalized insurance claim or amount" with respect to Tomball or MarinaGate because the insurer can contest coverage even if the amount of the loss at issue is resolved via an appraisal process.  *See, e.g., Sec. Nat'l Ins. Co. v. Waloon Inv., Inc.*, 384 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("[A]n appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy."). Azad argues there is no evidence "showing that any insurance amount was ever agreed by Lloyd's to be within the scope of policy coverage for the Tomball or MarinaGate properties."[2]

Azad relies on three provisions of the Insurance Authorization Form as the basis for his condition precedent argument.

The first provision states:  "The owners agree to contract all necessary repairs to the building from Hurricane IKE damage with MRCO, Inc. once the

---

[1] During his testimony at trial, Azad answered affirmatively to a question asking whether the documents entitled "Insurance Authorization Form (Addendum page 2)" signed on December 5, 2008 constituted the "final written contract" saying MRCO is "going to perform the repairs" on the Tomball, Gulfbrook, and MarinaGate properties.

[2] On August 8, 2011, motions to exclude expert testimony regarding lost profits from Timothy Lozos were filed with respect to Gulfbrook, Tomball, and MarinaGate.  Among other things, the motions contended that this testimony should be excluded because "[n]o claim has been finalized with the insurance company.  [The] . . . insurance claim is currently in pending litigation in Case No. 4:10-cv-00180, styled *Chaucer Corporate Capital No. 2 Limited v. Hardam S. Azad*, in the United States District Court for the Southern District of Texas, Houston, Division, and no final contract (with an agreed scope, price, and materials) has been written and signed by the parties."

claim has been finalized and agreed to by both parties involved."

The second provision states: "All damaged items will be replaced with like, [sic] kind and quality not to exceed the amount finalized with Insurance Company for claim date stated above."

The third provision states: "In the event of denial and or no claim the property owner will not be assessed any fees by MRCO, Inc."

MRCO and Commercial Roof respond that the provisions upon which Azad relies are covenants rather than conditions precedent; the provisions were satisfied; or, compliance with these provisions was excused. We agree that the provisions are covenants; they are not conditions precedent to Azad's obligation to perform under the Insurance Authorization Form and Addendum with respect to the Tomball and MarinaGate properties.

"In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (citing *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983), and *Gallup v. St. Paul Ins. Co.*, 515 S.W.2d 249 (Tex. 1974)). "In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." *Id.* (citation omitted). "If no such language is used, the terms will be construed as a covenant in order to prevent a forfeiture." *Id*. "While there is no requirement that such phrases be utilized, their absence is probative of the parties['] intention that a promise be made, rather than a condition imposed." *Id*. (citing *Hohenberg Bros.*, 537 S.W.2d at 3).

It follows that "forfeiture by finding a condition precedent is to be avoided

13

when another reasonable reading of the contract is possible." *Id.* (citing *Schwarz-Jordan, Inc. v. Delisle Constr. Co.*, 569 S.W.2d 878 (Tex. 1978), and *Hohenberg Bros.*, 537 S.W.2d at 3). "Because of their harshness in operation, conditions are not favorites of the law." *Id.* (citing *Sirtex Oil Indus., Inc. v. Erigan*, 403 S.W.2d 784, 787 (Tex. 1966), and *Hohenberg Bros.,* 537 S.W.2d at 3).

Applying these precepts, we conclude that the language at issue in the Insurance Authorization Form establishes covenants rather than conditions precedent. The form contains no "if," "provided that," or "on condition that" language. The provisions upon which Azad relies reasonably can be read to establish covenants so as to avoid forfeiture. *See Criswell*, 792 S.W.2d at 948-49.

Not only is there a lack of conditional language, but a plain reading of the provisions indicates that the provisions include covenants rather than conditions precedent. The first provision's references to a claim that "has been finalized," and to an agreement on the claim "by both parties involved," indicates submission of a claim by contracting parties Azad and MRCO in a specific amount to the insurer – not to a later coverage determination that the insurer may make. This reading is consistent with the subsequent references to "both parties" – meaning Azad and MRCO – in the form's penultimate paragraph. When the Insurance Authorization Form refers to the insurer, as it does in the second provision, the form specifically references the "Insurance Company." The second provision indicates that the amount ultimately "finalized with the Insurance Company" will act as a cap on MRCO's payment for replacing damaged items with items of like kind and quality, rather than a condition to enforceability of Azad's obligation to contract with MRCO to perform repairs.

The third provision establishes that a subsequent coverage denial with respect to the full claim amount effectively would cap MRCO's fees at zero. This

14

language does not condition Azad's obligation under the Insurance Authorization Form to contract with MRCO for "all necessary repairs" upon a threshold coverage determination. Instead, this provision addresses circumstances arising when no claim is submitted to the insurer, or when the insurer denies the claim submitted to the insurer after Azad already has contracted to have MRCO perform "all necessary repairs" of Hurricane IKE damage to the subject property. It is undisputed that Azad and MRCO submitted insurance claims for the Tomball and MarinaGate properties. Azad identifies no evidence adduced at trial that roof repair claims submitted for Tomball and MarinaGate were denied as to the full claim amount.[3]

For these reasons, we reject Azad's contention that the agreements are unenforceable due to the failure of a condition precedent.

## B.    Indefiniteness

Azad argues that the Insurance Authorization Forms and Addendums referencing Tomball and MarinaGate are too indefinite to be enforced because each form lacks two essential terms: (1) the amount to be paid; and (2) the scope

---

[3] Azad points to an appraisal award for the Tomball property that was made after trial, and after the trial court's December 2, 2011 final judgment was signed, in connection with his condition precedent argument. Azad attached these awards as exhibits to "Defendant's Supplemental Motion for Judgment Notwithstanding the Verdict or, Alternatively, Motion for New Trial" filed on February 9, 2012. According to Azad, "no positive insurance claim amount would be finalized, or proceeds paid, for Tomball" because these post-trial awards were lower than the deductible for this particular property. These awards provide no basis for disturbing the final judgment on appeal because "[e]vidence not in existence prior to judgment cannot form the basis of a new trial." *In re C.Y.C.*, No. 14-11-00341, 2012 WL 3223674, at *19 (Tex. App.— Houston [14th Dist.] 2012, pet. denied) (citing *In re S.M.V.*, 287 S.W.3d 435, 451 (Tex. App.— Dallas 2009, no pet.)). Azad also contends that he had no right to obtain insurance proceeds for the Tomball property, or "authority to go forward on a repair contract with MRCO," because the Tomball property was foreclosed on before finalization of the insurance recovery. This contention does not address whether a condition precedent existed with respect to Azad's obligation to contract with MRCO for "all necessary repairs" to the Tomball property.

of the repair work to be performed. This contention echoes Azad's accompanying argument that price and scope cannot be determined until the insurer makes a coverage determination. MRCO responds that a contract "is enforceable so long as the language used sets an ascertainable fact or event by which the term of the contract may be determined."

"In general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). "But an agreement to make a future contract is enforceable only if it is 'specific as to all essential terms, and no terms of the proposed agreement may be left to future negotiations.'" *Id*. (quoting *Foster v. Wagner*, 343 S.W.2d 914, 920-21 (Tex. Civ. App.—El Paso 1961, writ ref'd n.r.e.)). "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Id*.

According to Azad, the amount to be paid and the scope of repair work to be performed with respect to Tomball and MarinaGate could not be specified in each Insurance Authorization Form and each Addendum because "both were subject to future negotiation (and/or litigation) with the insurer to determine how much, if any, the insurer would pay on the damage claims." This is a variation of the condition precedent argument, which we already have rejected, that no contract could exist between Azad and MRCO until the insurer made a coverage determination.

We reject this variation of the argument because the Insurance Authorization Form and Addendum were not subject to further negotiation *as between Azad and*

16

*MRCO*.  With respect to amount, the Insurance Authorization Form capped the sum to be paid by Azad to MRCO for repairs at an amount "not to exceed the amount finalized with Insurance Company for claim date stated above."  If the insurer were to deny the claim, then Azad would "not be assessed any fees by MRCO, Inc."

This payment term is no less enforceable than other similar payment terms that have been upheld between contracting parties who linked the fee at issue to an amount paid in the future by a third party.  *See, e.g., Criswell,* 792 S.W.2d at 947 (contract between engineer and property owner provided that engineer's fee for assembling information needed to sell real property would be computed as a percentage of the property's subsequent sales price); *Sturges v. Sys. Parking, Inc.,* 834 S.W.2d 472, 473 (Tex. App.—Houston [14th Dist.] 1990, writ dism'd) (contract between real estate broker and parking management company provided that broker's fee for negotiating management agreement with third party would be computed as half of all parking management fees paid by third party to management company).

With respect to scope, the Insurance Authorization Form provides that "the scope of work and the materials used for repairs and or replacement from hurricane damages will be approved by owners and then the final contract can be written and signed by both parties."  The later-signed Addendum provides that MRCO "will be doing all repairs or replacements for the Insurance amount . . . ."

We reject Azad's contention that the Insurance Authorization Form and Addendum are too indefinite to be enforced.

## C.    Ripeness

Azad argues in the alternative that subject matter jurisdiction is lacking as to

claims concerning the Tomball and MarinaGate properties because those claims are not ripe. He argues: "This is because at the time the lawsuit was filed, the facts were not sufficiently developed to demonstrate that an injury had occurred or was likely to occur for those two properties, rather than being contingent or remote." This appears to be another variation of the already-addressed contention that MRCO can assert no claim against Azad until the insurer has made and litigated a coverage determination. We have rejected this contention in the course of addressing Azad's condition precedent and indefiniteness arguments, and we reject it in this form as well.

We overrule Azad's first issue and all subparts.

## II.    Sufficiency of the Evidence to Support the Jury's Answers

### A.    Question No. 1

This question was framed as follows: "Did Hardam S. Azad disclose to Plaintiffs, on or before December 3rd, 2008, that the Gulfbrook, Tomball Center, and Marinagate properties were owned by entities other than himself or that he was acting on behalf of another party in signing the Insurance Authorization Agreements?" The jury answered, "No." Based upon this finding, MRCO and Commercial Roof requested entry of judgment against Azad individually in connection with the damages awarded on their claims for breach of contract. The trial court complied and signed a final judgment awarding damages against Azad individually.

On appeal, Azad contends that the final judgment's award of damages against him individually is erroneous because (1) undisclosed principal was neither pleaded nor tried by consent; and (2) no evidence supports the jury's "No" answer

18

to Question No. 1.[4]

"Count One" of the live petition is identified as "Breach of Contract (Against GBP Partners, Ltd., Tomball Center, Inc., and Webster/MarinaGate, Inc." "Count Two" is identified as "Fraud (Against Defendant Azad)." Despite the labels, the paragraphs under "Count One" nonetheless includes allegations that Azad entered, breached, and repudiated agreements relating to Gulfbrook, Tomball Center, and MarinaGate. Azad did not specially except to this petition.

Question No. 1 was submitted to the jury without objection at the charge conference. "When issues not raised by the pleadings are tried by implied consent of the parties, they will be treated as raised by the pleading." *Pleasant Grove Builders, Inc. v. Phillips*, 355 S.W.2d 818, 822 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.) (citing Tex. R. Civ. P. 67). "Failure to object to the submission of an issue to the jury precludes a party from objecting on appeal, or on motion for new trial that the issue was not raised by the pleadings." *Id*. The Texas Supreme Court cited *Pleasant Grove Builders, Inc.* with approval in *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991).[5]

Turning to the evidence, LeTulle testified that he was told Azad was the property owner and understood Azad to be the owner. Azad is identified as the "Property Owner" on each Insurance Authorization Form and each Addendum. No other person or entity is identified as the "Property Owner," and there is no language in the Insurance Authorization Form or Addendum for any property that

---

[4] Azad raises the first contention as part of his third issue on appeal, and his second contention as part of his second issue on appeal.

[5] Azad also contends that Question No. 1 should not have been tied to a December 3 date because the Addendum documents were signed on December 5. Given the absence of a charge objection to Question No. 1, we reject any suggestion of charge error on this basis and review sufficiency of the evidence to support the jury's answer to Question No. 1 in light of the charge as given. *See, e.g., Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex. 1985).

19

identifies any representative capacity for Azad. LeTulle testified that, during the course of litigation, "[W]e've come to know that there were other fellows or other people involved in these properties." LeTulle answered "No" in response to a question asking, "Was that ever represented to you prior to entering into these contracts, sir?"

We overrule Azad's challenges in connection with Question No. 1 as asserted in his second and third issues on appeal.

### B.    Question No. 2 and No. 3

Question No. 2 asked: "Did any of the Defendants named below fail to comply with the terms of the agreements with Plaintiffs?" The jury answered "Yes" as to Tomball Center, Webster/MarinaGate, and GBP Partners. Azad contends there is "no evidence that Azad: (1) required appellees to agree to any changes in the IAFs as a condition to performing any work; (2) refused to allow appellees to move forward with any such work; or (3) otherwise said or did anything indicating a[n] intention not to perform."

Question No. 3 asked: "Was any of the Defendants' failure to comply with the agreements with Plaintiffs excused?" The jury was instructed that any failure to comply was excused if "Plaintiffs repudiated the contract" or if "Plaintiffs failed to comply with a material obligation of the contract." The jury answered "No" as to Tomball Center, Webster/MarinaGate, and GBP Partners. According to Azad, "[T]he evidence conclusively proves . . . that the appellees were the first and only parties who repudiated and materially breached the agreements." Azad contends that, "rather than being dismissed by Azad, appellees simply *chose* to stop working, and thereby repudiated the alleged agreement themselves."

According to Westbrook's testimony, Azad demanded at a meeting on

September 4, 2009 that MRCO and Commercial Roof use a portion of the insurance proceeds in a way that differed from the intended purpose of roof repair – namely, to upgrade the Gulfbrook building's facade, which had not been damaged by the hurricane. Westbrook also testified that, on the same date, Azad insisted that MRCO and Commercial Roof participate in competitive bidding to obtain the right to perform work that already had been contractually promised to them.

The record contains evidence that MRCO refused to do as Azad demanded on September 4, 2009, and that Azad terminated MRCO in response. Westbrook testified that "Mr. Azad created a dispute and dismissed me from the property before we had a chance to finalize that additional scope of work." Westbrook further testified that Azad "wanted to use part of the money to put a lesser roof on and he wanted to upgrade the facility on the outside with stucco and a rendering on the fascia. And I had informed Zurich . . . that that's what he wanted to do and they denied that and said that we could not do anything other than what the scope of work [was] that was agreed to." Similarly, in response to a question asking, "You were not allowed to perform those repairs?" LeTulle testified: "I was kicked off the job, sir."

For his part, Azad contradicted Westbrook's version of events and asserted: "I never dismissed him from the property . . . ." According to Azad, the disagreement on September 4, 2009 was limited to whether they should accept an insurance amount to which the carrier's adjuster had agreed, or instead try negotiate for a higher amount. The following colloquy then occurred during Azad's testimony:

> Q. Okay. So, did you fire MRCO or Mark Westbrook on September 4?

21

A.    I did not.

Q.    Did you dismiss them from the property?

A.    I did not.

Q.    Did you tell him he couldn't work there anymore?

A.    I did not.

Q.    By any words or conduct did you indicate to him that your relationship with MRCO was through?

A.    No.  In fact, I have testified to the contrary.  I was begging for him then and subsequent days.

Azad also points to testimony from LeTulle that MRCO stopped work because Azad was "trying to change the deal up on us."

Although Azad assails Westbook's and LeTulle's testimony as being conclusory, their testimony that Azad terminated MRCO is no more conclusory than Azad's competing testimony that he did not do so.  In short, the jury was presented with a swearing match at trial concerning events at the September 4, 2009 meeting, and whether Azad or MRCO decided not to go forward with the contractual arrangement reflected in the Insurance Authorization Form and the Addendum.  The jury determined that Azad failed to comply, and it answered "no" to a question asking whether Azad's failure to comply was excused.  Legally sufficient evidence supports the jury's answers.  We overrule Azad's challenges in connection with Question No. 2 and Question No. 3 as asserted in his second issue on appeal.

### C.    Question No. 5

Question No. 5 was predicated on a "no" answer to Question No. 3 and stated as follows:  "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for the damages, if any that resulted from such failure to comply?"  The jury was instructed to consider two elements of

22

damages and none other. The first element was "[l]oss of contractual profits by Plaintiffs plus expenses incurred before breach by any of the Defendants named below." The second element was "Plaintiffs' lost opportunity costs due to breach by any of the Defendants named below."

The charge defined "loss of contractual profits" as "the total amount that Plaintiffs expected to make as profit under the agreements as well as the expenses that Plaintiffs incurred in preparation or performance of the agreements and expected to recoup." The charge defined "lost opportunity costs" as "the amount Plaintiffs could have made on other business opportunities which were lost due to Plaintiffs' reliance on performing the agreements with Defendants."

The jury awarded $1,691,015.67 as to Tomball; $1,044,240.81 as to MarinaGate; and $925,230.95 as to Gulfbrook. Azad contends that there is no causal link between the damages awarded in response to Question No. 5 with respect to Tomball and MarinaGate and any contractual breach by Azad because "any payments to the appellees under the IAFs and addendums were contingent upon a finalized insurance claim and amount for each property." He further argues that "any damages suffered by the appellees with regard to Tomball and MarinaGate would have been caused by the lack of a finalized insurance claim and amount on those properties." Having rejected Azad's condition precedent argument, we likewise reject his causation argument asserted in connection with his second issue challenging the jury's damage award in response to Question No. 5. We now turn to Azad's remaining arguments challenging the damage question and award.

### 1. Charge error

Azad contends in a footnote that Question No. 5's definition of "loss of contractual profits" is erroneous because it refers to "expected" profit and

"expected" recoupment of expenses. Azad contends this formulation is "an incorrect statement of the measure of lost profits because it was based on what appellees subjectively expected to make as a profit rather than what they reasonably could have made as profit." Azad also suggests that the instruction is erroneous because it differs from the sample instruction for "[l]oss of contractual profit plus expenses incurred before breach" contained in the pattern jury charge. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* PJC 115.4 (2012) ("The amount *Don Davis* agreed to pay *Paul Payne* less the expenses *Paul Payne* saved by not completing the paint job."). Azad's footnote discussing the instruction contained in Question No. 5 does not address harm from the asserted error.

We reject both of Azad's charge error contentions. The trial court submitted this instruction in the context of a larger question asking the jury to determine "[w]hat sum of money, if any, if paid now in cash would fairly and reasonably compensate Plaintiffs for their damages, if any, that resulted from such failure to comply." This question contained a reasonableness requirement and thereby foreclosed an award based solely upon subjective beliefs about future profitability. This point was emphasized by damages expert Timothy Lozos, who began his testimony by telling the jury: "I'm here to provide expert opinion on the reasonable amount of profits that MRCO could have . . . made performing these projects." Additionally, any departure from the sample instruction in PJC 115.4 was not material and fell within the trial court's discretion to tailor the charge to the particular circumstances of this case. *See Hatfield v. Solomon*, 316 S.W.3d 50, 61 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We overrule Azad's third issue insofar as it asserts charge error in connection with this instruction in Question No. 5.

## 2. Methodology of lost profits calculation

Azad assails the lost profit testimony proffered by damage expert Timothy Lozos, a certified professional estimator employed as a senior project director for Nelson Architectural Engineers, with respect to Tomball and MarinaGate.[6] Nelson Architectural Engineers provides forensic engineering services to investigate structures damaged by hurricanes, winds, flood, fire, and other causes. Lozos is a certified insurance appraisal umpire with 15 years of experience in construction and project management.

Azad contends on appeal that Lozos's methodology is flawed with respect to his computations for MRCO's lost profits on the Tomball and MarinaGate properties. Azad does not challenge Lozos's qualifications to testify as an expert on this subject. Azad filed motions to strike Lozos's testimony in the trial court, which were the subject of a pretrial hearing. The trial court denied Azad's request to strike Lozos's testimony and allowed Lozos to testify at trial.

Lozos opined at trial regarding "[t]he reasonable amount of profit that MRCO could have been expected to make" in performing repairs on the Tomball, MarinaGate, and Gulfbrook properties.

For Tomball and MarinaGate, Lozos computed lost profits by (1) starting with the total repair cost estimate for each property that was prepared by MRCO, agreed to by Azad, and submitted to the insurer for each property; and then (2) subtracting sums for labor, materials, and equipment that MRCO would have incurred in performing the repairs.

Lozos computed the dollar value of deductions MRCO would have incurred

---

[6] Azad's briefing in connection with Question No. 5 challenges only the lost profit awards for Tomball in answer blank 5a and MarinaGate in answer blank 5b. Azad does not challenge on appeal the lost profit award with respect to Gulfbrook in answer blank 5c.

for labor, materials, and equipment using a software program called "Xactimate," which is the same software MRCO used to prepare its claims amounts for submission to the insurers. *See generally Denley v. Hartford Ins. Co.*, No. 07-4015, 2008 WL 2951926, at \*4 (E.D. La. July 29, 2008) (Xactimate estimating tool "is widely recognized and used in the insurance industry to estimate damage."); *see also Shadow Lake Mgmt. Co. v. Landmark Am. Ins. Co.*, No. 06-4357, 2008 WL 2510121, at \*4 (E.D. La. June 17, 2008) ("Because [the expert] . . . used Xactimate, a program commonly used in the insurance industry, his opinions are sufficiently reliable. Indeed, the Xactimate methodology is reliable under Daubert because inputting the same data into the analysis would reliably result in the same output."). Azad does not contend on appeal that Xactimate is unreliable when used in this context; he also does not contend on appeal that Lozos's use of Xactimate in his computations makes Lozos's methodology unreliable or renders his opinions inadmissible. Azad's appellate argument assumes the accuracy of the labor, materials, and equipment costs that Lozos relied upon in his computations.

Lozos arrived at a lost profit figure of $1,044,240.81 for MarinaGate by (1) starting with a claim amount of $2,047,531.99 that was dated December 19, 2008 and submitted to Certain Underwriters at Lloyd's, London; and then (2) subtracting $1,003,291.18 for labor, materials, and equipment. Lozos arrived at a lost profit figure of $1,691,015.67 for Tomball by (1) starting with a claim amount of $3,315,717.20 that was dated December 20, 2008 and submitted to Certain Underwriters at Lloyd's, London; and then (2) subtracting $1,624,701.53 for labor, materials, and expenses. The jury's lost profit findings for MarinaGate and Tomball correspond exactly to the amounts computed by Lozos.

After submission of the December 2008 claims amounts to the insurers, appraisal provisions were invoked under which an insurance appraiser retained by

the insured, an insurance appraiser retained by the insurer, and an umpire determined the amount of the losses. Lozos testified that "[m]ost insurance policies have an appraisal clause in them saying that if the owner and the insurance company have a disagreement on . . . the cost of damages to the property . . . they will each bring in an appraiser who then will bring in an umpire, each appraiser will evaluate those damages and attempt to come to an agreement." He continued, "Those items they disagree on they will take to the umpire who will make a binding decision and issue an award." He told the jury that this decision is binding on the property owner and the insurer.

The appraisal process began in January 2009. In June 2010, the appraisal panel issued a $1,553,716.80 award for MarinaGate. This award was introduced into evidence as an exhibit during the October 2011 trial. The panel issued appraisal awards for Tomball in late December 2011 and January 2012 totaling $376,330. These awards for Tomball were made after trial concluded and after the trial court signed its December 2, 2011 final judgment. Azad attached these awards for Tomball as exhibits to "Defendant's Supplemental Motion for Judgment Notwithstanding the Verdict or, Alternatively, Motion for New Trial" filed on February 9, 2012.

Azad contends on appeal: "Because Lozos's opinion on the lost profits recoverable by appellees for MarinaGate and Tomball were based on assumptions that were not only based wholly on conjecture, but also materially different from the undisputed facts in evidence, those opinions are no evidence of lost profits on those properties." He continues: "In addition, because the assumed insurance amounts used by Lozos were higher than could have actually been achieved, appellees were awarded a greater recovery than they could have obtained if the agreement had been performed." Azad bases these contentions on the binding

27

appraisal awards delivered in June 2010 for MarinaGate and late December 2011/early January 2012 for Tomball, which were lower than the initial claim amounts submitted to the insurers in December 2008 and used as the starting point for Lozos's lost profit calculations. Azad also contends that the appraisal awards were a ceiling for purposes of calculating lost profits, and in fact could have been lower based on further reductions such as a deductable – resulting in a negative lost profits figure after subtracting expenses for labor, materials, and expenses.[7]

MRCO and Commercial Roof respond that Lozos's calculations are reliable and sufficient to support the trial court's judgment awarding lost profits as to MarinaGate and Tomball.[8] They dismiss the subsequent appraisal awards, emphasizing that benefit-of-the-bargain damages "are not based on what actually occurred but on what would have occurred had the Agreements been performed." In support of this proposition, they cite *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 608 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); and *Avenell v. Chrisman Props., L.L.C.*, No. 14-08-01180-CV, 2010 WL 1379972, at *4 (Tex. App.— Houston [14th Dist.] Apr. 8, 2010, no pet.).

This proposition is fine as far as it goes, but it does not go so far as to relieve

___

[7] Azad also reprises his condition precedent contention to argue that no award in any amount is sustainable as to MarinaGate and Tomball because "no insurance claim amount had been finalized" with the insurers as of the time of trial. Having rejected the condition precedent theory for reasons discussed earlier in this opinion, we likewise reject this iteration of the same argument.

[8] MRCO and Commercial Roof do not contend on appeal that Lozos's computations, and the corresponding amounts awarded by the jury for MarinaGate and Tomball, can be supported based on Question No. 5's alternative "lost opportunity cost" measure for "other business opportunities which were lost due to Plaintiffs' reliance on performing the agreements with Defendants." MRCO and Commercial Roof identify on appeal no "other business opportunities which were lost."

28

MRCO and Commercial Roof of the burden to prove "the amount of lost profits by competent evidence and with reasonable certainty" when they contend that profits would have been obtained if the breached agreements had been performed. *See Parkway Dental Assocs.,* 391 S.W.3d at 609 (citing *Szczepanik v. First S. Trust Co.*, 883 S.W.3d 648, 649 (Tex. 1994)); *see also Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 776 (Tex. 2009) (per curiam) ("'Under the benefit-of-the-bargain measure, lost profits on the bargain may be recovered if such damages are proved with reasonable certainty.'") (quoting *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998)).

To explain the difference between the binding $1,553,716 MarinaGate appraisal award determined in June 2010 and Lozos's $2,047,531.99 starting point for his lost profit computation, MRCO and Commercial Roof posit that "[t]he $500,000 difference results from Azad's failure to seek an award for code compliance upgrades in the claims process" after he fired MRCO. MRCO and Commercial Roof point to testimony from Donald McIntare, a public adjuster and roof consultant who worked for Azad from January to September 2009 and acted as an appraiser for Azad. They also point to the appraisal award, which awarded nothing for code upgrades.

The cited testimony from McIntare is unclear; it does not explain a $500,000 difference. McIntare answered "Correct" when asked: "When you said the – there was a difference between Mr. Westbrook's Xactimate reports and your reports you said a lot of that difference could be explained by code upgrades, correct?" McIntare agreed that he "didn't consider code upgrades." McIntare assigned no specific dollar value to the code upgrades. He agreed that "insulation" was one of the "big items that you excluded" in connection with code upgrades. McIntare was asked this question: "Now, for the six appraisals . . . how much would that

29

insulation have made up for the price difference?" McIntare answered, "Possibly 20, 30 percent." During direct examination, Westbrook engaged in this colloquy with appellees' counsel after examining the MarinaGate appraisal award:

> Q.      Do you know – how much did MRCO estimate in repairs for Marinagate?
>
> A.      I believe with the code upgrades it was 2.1 million.
>
> Q.      So then the difference between the 2.1 and the 1.5, do you believe those to be code upgrades?
>
> A.      Very well could be. I wouldn't know.

We also note that the "Increased Cost of Construction" provision in the Lloyd's policy applicable to MarinaGate states: "The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less." The provision also states: "If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage." On this record, and in light of the binding appraisal award with respect to MarinaGate, we cannot say that MRCO and Commercial Roof have established $1,044,240.81 in lost profits for MarinaGate with reasonable certainty. *See Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 684-85 (Tex. App.—Houston [14th Dist.] 2010, no pet.)

With respect to Tomball, Azad relies again on a subsequent appraisal award in attacking the sufficiency of the evidence to support the jury's lost profit award. Unlike the MarinaGate appraisal award, however, the Tomball appraisal award was not admitted into evidence at trial – and, in fact, did not *exist* until after the

30

trial already had been concluded and the trial court had signed its final judgment. The Tomball appraisal award goes beyond the realm of newly discovered evidence; it is evidence that did not exist at the time of trial. We cannot assess sufficiency of the evidence on the basis of evidence that the finder of fact could not consider because it had not yet come into existence. *See Kubala Pub. Adjusters, Inc. v. Unauthorized Practice of Law Comm. for Supreme Court of Tex.,* 133 S.W.3d 790, 794 (Tex. App.—Texarkana 2004, no pet.) ("We are a reviewing court, not a fact-finding court, and we cannot consider newly created evidence which was necessarily not presented to the trial court."); *see also In re C.Y.C.*, No. 14-11-00341, 2012 WL 3223674, at *19. For the same reason, we reject Azad's reliance on a January 20, 2012 letter written by counsel for the insurers to argue that Lozos's lost profit calculation improperly fails to take into consideration the deductable applicable to Tomball.[9]

We sustain Azad's second issue in part with respect to the jury's award for MarinaGate in response to Question No. 5, which is not supported by legally sufficient evidence. We render judgment that MRCO and Commercial Roof cannot recover lost profits with respect to MarinaGate. We overrule Azad's second issue with respect to the jury's award for Tomball in response to Question No. 5.

### E.    Question No. 9

In response to Question No. 9, the jury awarded $739,359 in attorney's fees for preparation and trial; $75,000 for an appeal to the court of appeals; and $25,000

---

[9] Azad further contends that "no amount would have been payable to defendants on that property in any event" because of a subsequent foreclosure on Tomball. Lozos testified without objection at trial that the foreclosure "has no bearing on whether the money is paid out by the insurance company. The property was insured and it was damaged during the claim period." He continued: "[R]egardless of whether it's foreclosed or not, they owed that money."

for an appeal to the Supreme Court of Texas. Azad argues: "To the extent any of Azad's preceding challenges to the judgment are sustained, the award of attorney's fees must be reversed."

As discussed above, the lost profits award with respect to MarinaGate is not supported by legally sufficient evidence; therefore, the award of damages must be reduced by this amount. Among other factors, the jury was instructed to consider "the amount involved and the results obtained" in assessing its attorney's fees award. The MarinaGate award accounted for almost a third of the total amount awarded as lost profits. This circumstance makes it appropriate to reverse and remand for a retrial of the amount of attorney's fees. *See Young v. Qualls*, 223 S.W.3d 312, 314-15 (Tex. 2007) (per curiam) (Unless an appellate court is reasonably certain that the jury was not significantly influenced by the erroneous amount of damages it considered, "the issue of attorney's fees should be retired if the damages awarded are reduced on appeal."); *see also Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, No. 05-04-01358-CV, 2013 WL 2456107, at *11-12 (Tex. App.—Dallas Feb. 13, 2013, Rule 53.7(f) motion granted).[10]

We sustain Azad's second issue in part with respect to the award of attorney's fees in response to Question No. 9. The attorney's fee claim is remanded for retrial.[11]

---

[10] Remand also will necessitate a determination by the trial court regarding the correct computation of prejudgment and postjudgment interest. *Basic Capital Mgmt., Inc.,* 2013 WL 2456107 at *12.

[11] We reject Azad's contention regarding an asserted lack of presentment of the claim for breach of contract given Azad's testimony that performance under the contract was demanded in September 2009. In light of the remand, we do not address the remaining arguments asserted in connection with the award of attorney's fees.

### F.    Additional Contentions

#### 1.    Standing

Azad contends the evidence is legally insufficient to establish that Commercial Roof "was in any contractual relationship with defendants" and, therefore, it "lacked standing to sue defendants on the IAFs and addendums."

"The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome . . . ." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005) (citation omitted). "A plaintiff has *standing* when it is personally aggrieved . . . ." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (original emphasis). Standing requires the existence of "'a real controversy between the parties'" that "'will be actually determined by the judicial declaration sought.'" *Id.* at 662 (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993).

Azad acknowledges that there was testimony at trial to the effect that MRCO and Commercial Roof entered into a joint venture under which Commercial Roof dealt with claims handling, MRCO performed the roof repairs, and both entities received equal shares of the profits after being paid out of the insurance proceeds. Westbrook signed the contracts. These circumstances demonstrate that Commercial Roof has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Cf. R.L. Lipsey, Inc. v. Panama-Williams, Inc.*, 611 S.W.2d 917, 920 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (one joint venturer has authority to bind other joint venturers by contracts made in furtherance of the joint enterprise). Azad further argues on appeal that Commercial Roof was not a named party or signatory to the Insurance Authorization Forms or the Addendums. This argument is unavailing because,

33

without objection, the jury charge defined the term "Plaintiffs" as submitted in Question No. 2 to include MRCO and Commercial Roof "collectively."

We overrule Azad's second issue insofar as it pertains to the standing of Commercial Roof.

### 2. Immateriality

Azad contends that the jury's answer to Question No. 6 is immaterial and should have been disregarded. This question asked: "Did Defendant Azad commit forgery with the intent to harm Plaintiffs?"

The jury answered "yes" to Question No. 6, but the answer was not unanimous. Because the jury answered "no" to Question No. 4 regarding fraudulent inducement, and was not unanimous as to the "yes" answer to Question No. 6, the jury followed the predicating instruction for Question No. 7 and did not answer Question No. 7 addressing whether harm from fraudulent inducement or forgery had been established by clear and convincing evidence. Based on Question No. 8's predicating instruction, the jury did not answer Question No. 8 addressing exemplary damages because it did not answer Question No. 7.

Azad moved to disregard the jury's answer to Question No. 6, among other answers. The trial court denied Azad's motion. Because the jury's non-unanimous answer to Question No. 6 cannot affect the trial court's final judgment, it is immaterial and should be disregarded. *See Fleet v. Fleet*, 711 S.W.2d 1, 2 (Tex. 1986) (per curiam).

We sustain Azad's second issue insofar as it pertains to disregarding the jury's non-unanimous answer to Question No. 6. The trial court's judgment is reformed to state that the jury's answer to Question No 6 is disregarded as immaterial.

34

### III. Trial Court's Exercise of Discretion

#### A. Tax Return Information

Azad contends that the trial court erred in excluding evidence of MRCO's tax returns, which Azad sought to introduce at trial in an effort to show that "appellees had mitigated their damages with other projects during the years [they] . . . would have performed work for defendants." MRCO objected to admission of this evidence at trial on grounds that it was not relevant, and that the prejudice from admission of tax return information would outweigh any asserted relevance. The trial court sustained this objection.

A trial court's ruling to exclude evidence is reviewed for abuse of discretion. *See, e.g., Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). We conclude that the trial court acted within its discretion under Texas Rule of Evidence 403 even if it is assumed for argument's sake that the tax return evidence bore some relevance to the damages inquiry. Azad does not contend on appeal that evidence pertaining to the asserted ability to mitigate damages was unavailable from other sources, such as cross-examination of personnel from MRCO and Commercial Roof regarding other projects on which they were working. Under these circumstances, the trial court acted within its discretion in refusing to admit the tax returns into evidence at trial. *See Kay v. Sandler*, 704 S.W.2d 430, 433-34 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (trial court acted within discretion in sustaining objection to admission of tax returns proffered to show losses incurred by company because information pertaining to company's financial performance was available through other documents, and through cross-examination).

We overrule Azad's third issue insofar as it challenges the trial court's exclusion of evidence pertaining to MRCO's tax returns.

## B. Admission of Testimony Concerning "Legal Conclusions"

Azad argues that the trial court erred in overruling his objections to legal conclusions contained in Lozos's testimony regarding (1) the nature of the coverage dispute between Azad and the insurers; and (2) "the insurer's reasons for filing the coverage lawsuit, which was outside the scope of his expertise." Azad provides no basis for concluding that the admission of such testimony, even if erroneous, rises to the level of reversible error under Texas Rule of Appellate Procedure 44.1. We overrule Azad's third issue insofar as it challenges the admission of this testimony.

## CONCLUSION

We reverse the trial court's final judgment with respect to the award of damages as to MarinaGate, and we render judgment that MRCO and Commercial Roof take nothing with respect to lost profits as to MarinaGate. We reverse the trial court's final judgment with respect to (1) the award of attorney's fees; and (2) the computation of prejudgment and postjudgment interest, and we remand for further proceedings consistent with this opinion. We reform the final judgment to state that the jury's answer to Question No. 6 is disregarded as immaterial. We affirm the trial court's final judgment in all other respects.


/s/     William J. Boyce
        Justice

Panel consists of Justices Boyce and Donovan and Senior Justice Simmons.[12]

---

[12] Senior Justice Rebecca Simmons sitting by assignment.